UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OTIS LINDER, JR., )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF LAKE FOREST, )<br>      Defendant. )<br>) | <br><br><br><br><br><br>**Jury Trial Demanded** |

# COMPLAINT

Plaintiff, Otis Linder, Jr., through his attorneys, complains of Defendant, City of Lake Forest, as follows.

## NATURE OF ACTION

1. This is an action for damages and equitable relief brought under Title VII of the Civil Rights Act, as amended, 42 U.S.C. §2000e, et seq., 42 U.S.C. §1981, and the Illinois Human Rights Act, 775 ILCS 5 et seq., to redress racial discrimination in the workplace, to redress retaliation for objecting to and complaining about race discrimination, and to enjoin Defendant from continuing to engage in unlawful employment practices and affirmatively institute and carry out policies and practices to provide equal employment opportunities for all and to prevent race discrimination.

## JURISDICTION, VENUE & PARTIES

2. Jurisdiction is based upon 28 U.S.C. §1331, 28 U.S.C. §1343, as the Complaint alleges violations and remedies under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), et seq., 42 U.S.C. §1981, and 42 U.S.C. §1988.

1

3. Plaintiff has complied with all administrative prerequisites prior to filing this action. Plaintiff filed a timely charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"), which charge was cross-filed with the Illinois Department of Human Rights.

4. The EEOC investigated the charge and on April 11, 2013, rendered a determination that the evidence discovered during the course of its investigation established reasonable cause to believe that the City of Lake Forest discriminated against Plaintiff in violation of Title VII.

5. Conciliation between the EEOC and the City of Lake Forest was unsuccessful. On or about August 26, 2013, the EEOC issued a Notice of Right to Sue, authorizing the instant action.

6. In November 2013, the parties, in effort to explore a resolution to the matter, negotiated and signed, on November 25, 2013, a Standstill Agreement, whereby the parties mutually agreed to extend the time to file any lawsuit on the discrimination claims up to and including January 14, 2014. As part of that agreement Defendant voluntarily agreed to waive any statute of limitations or similar defenses to those claims should the complaint be filed on or before January 14, 2014.

7. Plaintiff, Otis Linder, Jr. (hereinafter "Plaintiff"), is an African American male citizen and resident of the State of Illinois and is a current employee of Defendant, City of Lake Forest.

8. Defendant, City of Lake Forest (hereinafter "Defendant"), is an Illinois municipal corporation located in Lake County, Illinois.

9. At all times relevant hereto, Defendant was a covered employer within the meaning of Title VII.

10. This action properly lies in this district pursuant to 28 U.S.C. §1391 because the events giving rise to this claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

11. Plaintiff has been employed by Defendant for almost 25 years, most recently being employed as an Assistant Street Supervisor with the City of Lake Forest Public Works Department.

12. At all times relevant, Plaintiff performed his job duties at or above his employer's legitimate expectations.

### *Frequent and Repeated Discriminatory Comments in the Workplace*

13. Plaintiff is one of two African American employees in the Public Works Department and is the only African American at or above the assistant supervisor level.

14. During his employment Plaintiff was subjected to discriminatory and harassing conduct in the workplace based on his race (African American).

15. In approximately May 2011, Plaintiff was passed over for promotion to the position of Streets and Sanitation Supervisor. Instead, Lou Decker (white) was hired from outside the department into the position of Streets and Sanitation Supervisor and became Plaintiff's immediate supervisor.

16. At the time of his placement into the position of Streets and Sanitation Supervisor, it was well known at the City of Lake Forest that Mr. Decker had a history of racial animus and of repeatedly making racially discriminatory comments at work towards many minority and

ethnic groups.

17.   At the time Mr. Decker was made Plaintiff's immediate supervisor, Dan Martin, Superintendent of Public Works, and Michael Thomas, Director of Public Works, knew of Mr. Decker's history of racial animus and racially discriminatory comments.

18.   After becoming Plaintiff's immediate supervisor, Mr. Decker's racial animus continued unabated, including at times both in the presence of and directed at Plaintiff. Mr. Decker repeatedly used the word "Nigger" and would frequently acknowledge the work of his minority subordinates with the phrase, "that's very white of you" or admonish them to "be white about it" or perform a task "the white way."

19.   Following Mr. Decker's example, Rich Paulson, Assistant Supervisor in Parks and Forestry, would also refer to work being done "the white way," including in front of Plaintiff.

20.   On or about May 16, 2012, Mr. Decker and Defendant's other management personnel attended a zero tolerance workplace discrimination and harassment training program, including training on racial discrimination and harassment.

21.   The racial harassment and discrimination training was useless, however, in that only weeks later Mr. Decker continued his pattern of making racially hostile and bigoted remarks.

22.   On or about June 7, 2012, Mr. Decker saw photos on Plaintiff's desk of poorly performed electrical and concrete work that had been done on several street lights and city sidewalks and urged Plaintiff to, "look at this Nigger rig shit" and proceeded to complain that he and a co-worker, Joe Tomasello (white), had to stay late to repair the work.

23.   Plaintiff was offended by Mr. Decker's comment and immediately left the area.

4

24. Shortly thereafter, Mr. Decker approached Plaintiff supposedly to apologize for his racially discriminatory comment, and said to Plaintiff, "Otis, I apologize for using the word 'nigger' in the office."

25. Mr. Decker then, in front of Plaintiff, called out to Joe Tomasello (white) and said, "Joe, I'm apologizing to Otis for using the word "Nigger rig" for the job you and I had to stay late for. I have a potty mouth."

26. Manifestly, Mr. Decker used the guise of an apology to Plaintiff merely as an opportunity to once again subject Plaintiff to his racist and bigoted remarks and to further humiliate and embarrass Plaintiff.

27. Mr. Decker's bigotry was so thinly veiled that even Plaintiff's white co-worker described it as meaningless and clearly just an opportunity for Mr. Decker to use the term "Nigger" two more times.

28. Thereafter, Mr. Decker continued to use racially discriminatory terms including "Nigger" and "the white way."

29. Unfortunately, Mr. Decker's bigotry and discriminatory comments do not just target African Americans but are also directed at other non-white employees. Mr. Decker has repeatedly made comments referring to Hispanic employees as: "fucking Mexicans," "stupid Mexicans," and "damn Mexicans," including in the presence of Hispanic employees, and advising his subordinates that the city has "got to keep an eye on those Mexicans."

30. Mr. Decker has also repeatedly used racially bigoted terms such as "wetback" and "spic," including in front of Hispanic employees.

5

*Pattern of Failing to Properly Address Complaints and Prevent Future Discrimination*

31. For many decades, Defendant has engaged in a pattern of failing to properly address complaints of discrimination or harassment and failing to correct and prevent future instances of discrimination or harassment.

32. On June 11, 2012, after no longer being able to handle a workplace replete with discriminatory comments, Plaintiff complained to the EEOC. Defendant's personnel policies and procedures specifically notify employees to complain of discrimination or harassment to the EEOC even if no internal complaint has yet been lodged.

33. Additionally, on or about June 15, 2012, Mr. Martin, Superintendent, was notified that Mr. Decker had used the term "Nigger" and "Nigger Rig" in front of Plaintiff. Many city employees confirmed for Mr. Martin that not only had Mr. Decker used these racially discriminatory remarks in front of Plaintiff and again in a fake apology to Plaintiff but Mr. Decker had also previously made other discriminatory remarks in the workplace.

34. In response to the June complaint about his bigoted and racist remarks, Mr. Decker had no account for himself other than to say, "I have a potty mouth."

35. Despite the blatant and intentional nature of Mr. Decker's bigoted conduct, despite the malice in repeating his discriminatory comments to Plaintiff under the guise of a false apology, and despite the fact Mr. Decker had done so in the face of having had anti-discrimination and anti-harassment training only weeks before and could offer no excuse for his conduct other than his "bad potty mouth," the City of Lake Forest felt no compulsion to take appropriate corrective measures to remedy the discrimination and harassment and instead issued a mere two day suspension on Mr. Decker.

36. Defendant's actions in inadequately disciplining Mr. Decker are part of a pattern of ignoring or dissuading complaints about Mr. Decker and failing to impose meaningful discipline to prevent future instances of discrimination or harassment.

37. The July 2012 incident was, in fact, not the first time Mr. Decker had been caught using racially discriminatory language. In approximately June 2011, Mr. Decker used the very same phrase, "Nigger rig" to Peter Gordon, Forestry Department Supervisor, when referring to shoddy work.

38. Mr. Gordon complained about this incident to Donna Dunn, Assistant to the Director of Public Works, and indicated that he wanted to file a formal ethics complaint. Mr. Gordon, fearing retaliation, told Ms. Dunn that he wanted to keep the complaint anonymous. Ms. Dunn told Mr. Gordon that he could not file an anonymous complaint, ignoring Mr. Gordon's legitimate fears that reporting a complaint could lead to retaliation. Ms. Dunn then wholly disregarded Mr. Gordon's complaint, refused to process the complaint or investigate Mr. Decker's conduct, and failed to impose any remedial or corrective action against Mr. Decker.

39. Indeed, Mr. Gordon's concerns were well founded given Defendant's history of failing to address complaints and Mr. Decker's pattern of threatening employees who have complained.

40. Throughout the years, many employees in the Streets and Sanitation Department have at one time or another complained about Mr. Decker. Often, after receiving a complaint about Mr. Decker, Mr. Thomas, Director of Public Works, would ignore the complaint, fail to initiate an investigation into the complaint, and/or refuse to impose any discipline on Mr. Decker.

41. Instead, on occasion, Mr. Thomas would inform Mr. Decker that an employee had complained about him and would identify that employee. On at least one occasion, after finding out who had complained about him, Mr. Decker took the complaining employees to the lakefront and physically threatened them, even making one complaining employee cry out of fear. Mr. Decker thereafter bragged about how he made that employee cry at the lakefront confrontation.

42. The inadequacy of Defendant's punishment on Mr. Decker is further demonstrated by the fact that he has not ceased making discriminatory comments, including using the term "Nigger" on a regular and repeated basis, even after Plaintiff filed his EEOC charge of discrimination and after Defendant concluded its internal investigation.

43. In fact, many employees in the Public Works Department confirmed to the EEOC during its investigation into Plaintiff's charge that Mr. Decker continued to use the term "Nigger" or "fucking Mexicans," and to make comments about doing things "the white way" well after June 2012.

*Pattern of Retaliatory Conduct Against Plaintiff and His Witnesses*

44. Defendant has also engaged in a pattern of retaliatory conduct against Plaintiff and witnesses who spoke in support of Plaintiff to the EEOC.

45. Since complaining, Mr. Decker has continued to be Plaintiff's immediate supervisor; emboldened by this continuing position of power, Mr. Decker has used his authority over Plaintiff to give him a substandard performance evaluation causing Plaintiff to lose a well-deserved merit based raise.

46. On or about January 23, 2013, Defendant also issued Plaintiff pretextual discipline stemming from Mr. Decker's failure to preserve the confidentiality of personnel files.

47. Mr. Decker left an employee's performance evaluation open and unattended on his desk. Another employee, who was not supposed to have access to these records, saw and read the performance evaluation and notified the subject employee.

48. Immediately after Plaintiff found out about this incident, he had the matter reported to Mr. Martin, Superintendent.

49. Incredibly, Defendant issued a reprimand to Plaintiff for reporting Mr. Decker's violation directly to the Superintendent, instead of reporting the employee's complaint to Mr. Decker first.

50. Prior to this incident, Plaintiff had not received any form of discipline in over 20 years of employment with the City of Lake Forest.

51. Similarly, Mr. Joe Tomasello received a substandard performance evaluation from Mr. Decker after serving as a witness for Plaintiff.

52. Miguel Guzman, who also served as a witness to Plaintiff during the investigation of his complaint both internally and at the EEOC, was issued several pretextual write-ups by Mr. Decker after June 2012 and later terminated on February 1, 2013; Mr. Guzman had worked for the City of Lake Forest for nearly 20 years.

53. Defendant's actions as described above are in direct violation of Title VII of the Civil Rights Act, 42 U.S.C. §1981, and the Illinois Human Rights Act. As a result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered lost wages, benefits, emotional distress, inconvenience, and other non-pecuniary losses.

## COUNT I
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII

54. Plaintiff re-alleges paragraphs 1 through 53 and incorporates them as if fully set forth herein.

55. Title VII as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000e et seq., makes it unlawful to discriminate against any individual in the terms, conditions or privileges of employment on the basis of race.

56. Racial harassment that creates a hostile and offensive work environment is actionable under Title VII.

57. By its conduct as alleged herein, Defendant discriminated against Plaintiff on account of his race in that Plaintiff was treated disparately and less favorably on the basis of his race and was subjected to a hostile and offensive work environment in violation of Title VII.

58. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless disregard of Plaintiff's right to be free from race discrimination and harassment.

59. As a result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits, pain, suffering, emotional harm and humiliation.

60. Plaintiff demands to exercise his right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant on Count I and that it:

    a) Declare that Defendant's conduct was in violation of Title VII of the Civil Rights Act as amended;

    b) Award Plaintiff the value of all actual damages to be proved at trial, including but not limited to, the value of all compensation, benefits, and other actual damages Plaintiff has lost and will continue to lose;

    c) Award Plaintiff damages for emotional distress and compensatory damages;

    d)    Award Plaintiff punitive damages;

    e)    Award Plaintiff reasonable attorney's fees, costs and disbursements;

    f)    Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them from engaging in any unlawful employment practice;

    g)    Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

    h)    Award Plaintiff any and all other relief as the Court deems just in the premises.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII

61. Plaintiff realleges paragraphs 1 through 53 and incorporates them as if fully set forth herein.

62. Title VII as amended by the Civil Rights Act of 1991, specifically 42 U.S.C. §2000(e)(3), makes it unlawful for an employer to retaliate against any employee because he has opposed any unlawful employment practice or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing pursuant to Title VII.

63. By its conduct as alleged herein, Defendant discriminated and retaliated against Plaintiff for exercising his rights under Title VII, opposing an unlawful employment practice, and/or participating in an EEOC proceeding, in further violation of Title VII.

64. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless disregard of Plaintiff's right to be free from impermissible retaliatory conduct.

65. As a result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits, pain, suffering, emotional harm and humiliation.

66. Plaintiff demands to exercise his right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant on Count II and that it:

a) Declare that Defendant's conduct was in violation of Title VII of the Civil Rights Act as amended;

b) Award Plaintiff the value of all actual damages to be proved at trial, including but not limited to, the value of all compensation, benefits, and other actual damages Plaintiff has lost and will continue to lose;

c) Award Plaintiff damages for emotional distress and compensatory damages;

d) Award Plaintiff punitive damages;

e) Award Plaintiff reasonable attorney's fees, costs and disbursements;

f) Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them from engaging in any unlawful employment practice;

g) Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

h) Award Plaintiff any and all other relief as the Court deems just in the premises.

## COUNT III
## RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. §1981

67. Plaintiff re-alleges paragraphs 1 through 53 and incorporates them as though fully set forth herein.

68. 42 U.S.C. §1981 makes it unlawful to discriminate against any person in the terms and privileges of employment or to take any adverse action on account of race.

69. Racial based harassment that creates a hostile and offensive work environment is actionable under 42 U.S.C. §1981.

70. By its conduct as alleged herein, Defendant discriminated against Plaintiff on account of his race in that Plaintiff was treated disparately and less favorably on the basis of his race and was subjected to a hostile and offensive work environment in violation of 42 U.S.C. §1981.

71. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless disregard of Plaintiff's right to be free from race discrimination and harassment.

72. As a result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits, pain, suffering, emotional harm and humiliation.

73. Plaintiff demands to exercise his right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant on Counts III and that it:

    a) Declare that Defendant's conduct was in violation of 42 U.S.C. §1981;

    b) Award Plaintiff the value of all actual damages to be proved at trial, including but not limited to, the value of all compensation, benefits, and other actual damages Plaintiff has lost and will continue to lose;

    c) Award Plaintiff damages for emotional distress and compensatory damages;

    d) Award Plaintiff punitive damages;

e) Award Plaintiff reasonable attorney's fees, costs and disbursements;

f) Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them from engaging in any unlawful employment practice;

g) Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

h) Award Plaintiff any and all other relief as the Court deems just in the premises.

## COUNT IV
## RETALIATION IN VIOLATION OF 42 U.S.C. §1981

74. Plaintiff re-alleges paragraphs 1 through 53 and incorporates them as though fully set forth herein.

75. 42 U.S.C. §1981 makes it unlawful to retaliate against any employee who has opposed an unlawful employment practice.

76. By its conduct as alleged herein, Defendant retaliated against Plaintiff on account of his race and his opposition to unlawful employment practices.

77. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless disregard of Plaintiff's right to be free from impermissible retaliatory conduct.

78. As a result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits, pain, suffering, emotional harm and humiliation.

79. Plaintiff demands to exercise his right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant on Counts IV and that it:

a) Declare that Defendant's conduct was in violation of 42 U.S.C. §1981;

b) Award Plaintiff the value of all actual damages to be proved at trial, including but not limited to, the value of all compensation, benefits, and other actual damages Plaintiff has lost and will continue to lose;

c) Award Plaintiff damages for emotional distress and compensatory damages;

d) Award Plaintiff punitive damages;

e) Award Plaintiff reasonable attorney's fees, costs and disbursements;

f) Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them from engaging in any unlawful employment practice;

g) Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

h) Award Plaintiff any and all other relief as the Court deems just in the premises.

## COUNT V
## RACE DISCRIMINATION IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT

80. Plaintiff re-alleges paragraphs 1 through 53 and incorporates them as if fully set forth herein.

81. The Illinois Human Rights Act ("IHRA") makes it unlawful to discriminate against any individual in the terms, conditions or privileges of employment on the basis of race.

82. By its conduct as alleged herein, Defendant discriminated against Plaintiff on account of his race in that Plaintiff was treated disparately and less favorably on the basis of his race in violation of the IHRA.

83. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless disregard of Plaintiff's right to be free from race discrimination.

84. As a result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits, pain, suffering, emotional harm and humiliation.

85. Plaintiff demands to exercise his right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant on Count V and that it:

    i) Declare that Defendant's conduct was in violation of the Illinois Human Rights Act;

    j) Award Plaintiff the value of all actual damages to be proved at trial, including but not limited to, the value of all compensation, benefits, and other actual damages Plaintiff has lost and will continue to lose;

    k) Award Plaintiff damages for emotional distress and compensatory damages;

    l) Award Plaintiff punitive damages;

    m) Award Plaintiff reasonable attorney's fees, costs and disbursements;

    n) Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them from engaging in any unlawful employment practice;

    o) Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

    p) Award Plaintiff any and all other relief as the Court deems just in the premises.

## COUNT VI
## RETALIATION IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT

86. Plaintiff realleges paragraphs 1 through 53 and incorporates them as if fully set forth herein.

87. The Illinois Human Rights Act ("IHRA"), specifically 775 ILCS 5/6‑101(A), makes it unlawful to retaliate against any employee who has opposed what he reasonably and in good faith believes to be unlawful discrimination.

88. By its conduct as alleged herein, Defendant discriminated and retaliated against Plaintiff for opposing what he reasonably and in good faith believed to be unlawful discrimination.

89. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless disregard of Plaintiff's right to be free from impermissible retaliatory conduct.

90. As a result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits, pain, suffering, emotional harm and humiliation.

91. Plaintiff demands to exercise his right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant on Count VI and that it:

    i) Declare that Defendant's conduct was in violation of Title VII of the Civil Rights Act as amended;

    j) Award Plaintiff the value of all actual damages to be proved at trial, including but not limited to, the value of all compensation, benefits, and other actual damages Plaintiff has lost and will continue to lose;

    k) Award Plaintiff damages for emotional distress and compensatory damages;

    l) Award Plaintiff punitive damages;

    m) Award Plaintiff reasonable attorney's fees, costs and disbursements;

    n) Enjoin Defendant and all officers, agents, employees and all persons in

    active concert or participation with them from engaging in any unlawful employment practice;

 o) Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

 p) Award Plaintiff any and all other relief as the Court deems just in the premises.

          Respectfully submitted,
          OTIS LINDER, JR.

    By:    s/ John P. Madden
          Attorney for the Plaintiff

John P. Madden
M. Megan O'Malley
Lindsey E. Goldberg
O'Malley & Madden, P.C.
542 So. Dearborn Street, Suite 660
Chicago, Illinois 60605
(312) 697-1382
jmadden@ompc-law.com